# WATERS v. ANTHONY.

FALSE ARREST; EVIDENCE; DIRECTING VERDICT; REVERSAL OF JUDGMENT IN AN ACTION AT LAW WITHOUT AWARDING A NEW TRIAL.

1. Copartners, conducting an express business, cannot be held liable for damages for false arrest and imprisonment at the suit of a former employee, who, at the instance of another employee, was arrested for stealing goods intrusted to the partnership, only because a printed general instruction to agents urged them to use the utmost diligence in the performance of their duties.

2. An employee of an express company, who, after the loss of a package of pearls intrusted to the company, having been approached by municipal detectives, communicates to them, in response to their questions, his suspicions of a fellow employee, who is thereupon arrested, is not liable in an action by the latter for false arrest and imprisonment, although one of the detectives testifies that his conversation with the defendant was such as to lead him to

believe that the defendant was responsible for the goods stolen, and that the witness would take the plaintiff in for the goods by the advice of the defendant and that he, the detective, judged from the conversation with the defendant that he was the complaining witness and requested witness to make the arrest as the suspicion was so strong against the plaintiff that he would make the arrest under that suspicion; and in the absence of other testimony a verdict should be directed for the defendant.

3. In such an action, it is error for the trial court to refuse to allow one of the detectives, who was concerned in the arrest of the plaintiff, to answer a question propounded by the defendant as to whether the arrest was made by the police department of the municipality, acting for itself, or at the instance and request of the defendant, as such question does not call for an opinion but for a statement of fact.

4. In such an action, a judgment for the plaintiff was reversed by this court without the award of a new trial, his testimony being insufficient to justify a verdict in his favor, it being assumed that he had adduced all of his testimony at the trial, and it not appearing that any testimony offered by him had been excluded.

No. 1181.   Submitted April 16, 1902.   Decided May 8, 1902.

HEARING on an appeal by the defendants from a judgment of the Supreme Court of the District of Columbia entered upon the verdict of a jury in an action for false arrest and imprisonment.                    *Reversed.*

The COURT in the opinion stated the case as follows:

This is a suit for false arrest and imprisonment, in which the appellee, George H. Anthony, as plaintiff, has recovered a verdict and judgment in the Supreme Court of the District of Columbia for the sum of $5,340.

The appellee was employed by the Adams Express Company as a helper on a wagon for the delivery of its goods in and about an office of the company at the Sixth Street Station of the Baltimore and Potomac Railroad Company in this city. In the month of October, 1899, some pearls were stolen from this office, where one of the appellants, James F. Waters, was a clerk in charge; and in January of 1900, the

appellee was arrested by one of the detective members of the
Metropolitan police force of the District upon suspicion of
having committed the robbery. He was taken first to the
police headquarters and then to one of the police stations,
and was detained there for two days under circumstances of
considerable indignity. He was then discharged from custody
without trial, and without any formal charge lodged against
him. There had been no warrant issued for his arrest, ap-
parently no formal complaint made against him by any one;
and there was no subsequent prosecution directed against
him. It seems to be conceded that he was wholly innocent
of complicity in the robbery. Thereupon he instituted this
suit to recover damages for the injury done to him, and was
successful in prosecuting it to judgment in the court below
against all the defendants named in the declaration, except
one, as to whom he entered a discontinuance at the end of
the trial before the jury.

There were five defendants named in the declaration,—
James F. Waters, who, as already stated, was a clerk for the
Adams Express Company in charge of the office of the com-
pany at the Sixth Street Railroad Station, and who was
immediately responsible for the safe-keeping of the packages
among which was that containing the stolen pearls; Oliver
B. George, the general agent of the Adams Express Com-
pany in this District; and Levi C. Weir, Henry Sanford,
and Clarence A. Seward, who, doing business as partners,
constitute what is known as the Adams Express Company,
which is not a body corporate, but only a partnership. Weir,
Sanford, and Seward are understood to be, or to have been,
nonresidents of the District of Columbia; but appearance
was voluntarily entered for all of them in this suit.

On the trial, at the end of the testimony, the suit was
discontinued by the plaintiff as to the defendant Oliver B.
George, the local agent of Adams Express Company, " on the
ground," as stated in the record, " that there was no evidence
connecting him with the plaintiff's arrest;" and accordingly
a verdict was recorded in his favor. On behalf of each and
all of the other defendants instructions were requested to

be given to the jury, which the court refused, to the effect that there was no sufficient evidence to warrant a verdict against them or any of them. An instruction requested by the plaintiff was given, and another instruction requested on behalf of the defendants was rejected. It is unnecessary to state either one of them at this time.

The case was submitted to the jury, and a verdict was rendered against each and all the defendants, other than George; whereupon judgment was entered, from which these defendants have appealed.

Some eleven days after the entry of the judgment, a suggestion of the death of Clarence A. Seward, one of the defendants, was made upon the record; and it was agreed that the cause should proceed without him. It was not made to appear when he had died; but it is understood that the death occurred long before the entry of judgment and long before the trial took place.

*Mr. William S. Thomas* and *Mr. Sidney T. Thomas* for the appellants.

*Mr. Henry E. Davis* and *Mr. George W. Drew* for the appellee:

At the request of the appellee, the trial court instructed the jury as follows:

"The jury is instructed that it is the duty of the defendants, The Adams Express Company, as a common carrier of goods safely to carry and deliver to the consignees thereof goods intrusted to the said company for carriage, and in case of the loss of any such goods before delivery, to use all reasonable diligence and to take all proper steps looking to the recovery of such lost goods, in order that they may be duly delivered to the consignees thereof; and the duties of the said company as thus defined and prescribed are to be met and discharged by the proper officers and agents of the company when the same should or can be met and discharged by such officers and agents in the due course of their employ-

ment. Accordingly, if the jury find from the evidence that
at the time of the grievances complained of in the declaration,
the defendant Waters was an agent or clerk of the said com-
pany *having charge of the receipt of goods being transported
and handled by the said company at a railroad station in the
city of Washington, and the delivery of such goods to the
consignees thereof;* that a package of goods while in the care
of the said company and received by it for transportation and
delivery, was lost or stolen from the said railroad station;
that the said Waters, *with a view to recovering the said
package of goods so lost or stolen,* directed or authorized a
police officer to arrest the plaintiff on the charge of having
stolen the said package of goods; that the plaintiff was there-
upon arrested and imprisoned, and was not guilty of stealing
the said package of goods, and was thereafter discharged as
being so not guilty, the plaintiff is entitled to recover in this
action against the defendant Waters and the said company
such damages as the jury may find from the evidence will
fairly compensate the plaintiff for the deprivation of his
liberty, the indignity of his arrest and the circumstances
attending the same, the injury to his feelings, and the mental
suffering and distress which he may have been caused and
suffered by him in the premises to the time of the trial."

As is evident, this instruction carefully avoids the possi-
bility of holding the company liable for any action by Waters
having for its object the punishment of the appellee as the
supposed person guilty of the larceny of the lost articles,
and places the company's liability upon the ground that what
Waters did was in the course of his employment by the com-
pany for the purpose of discharging its obligations to the
public as a common carrier of goods for hire of the special
class of such carriers known as express companies.

The duty of an express company and of its servants in re-
spect of recovering stolen packages is well exemplified in
the following case, which fully justifies the instruction under
consideration. *American Express Co.* v. *Patterson,* 73 Ind.
430. And that the conduct of Waters in causing the ap-
pellee's arrest was clearly in the course of his employment is

established by the following cases, among others: *Allen* v. *L. & S. W. R. Co.,* L. R., 6 Q. B. 65; *Edwards* v. *L. & N. W. R. Co.,* L. R., 5 C. P. 445; *Carter* v. *Howe Machine Co.,* 51 Md. 290; *Garrison* v. *Duenckel,* 50 Mo. 104; *Evansville, etc., Co.* v. *McKee,* 99 Ind. 519; *Chicago, etc., Co.* v. *Flexman,* 103 Ill. 546; *Lynch* v. *Metropolitan R. Co.,* 90 N. Y. 77; *Fick* v. *Railway Co.,* 68 Wis. 469; *Goff* v. *Great Northern Ry. Co.,* 3 El. & El. 672; *Ricord* v. *C. P. RR. Co.,* 15 Nev. 167; *Krulevitz* v. *Eastern R. Co.,* 143 Mass. 228; *Eichengreen* v. *L. & N. RR. Co.,* 96 Tenn. 229; *Palmeri* v. *Manhattan R. Co.,* 132 N. Y. 261; *Staples* v. *Schmid,* 18 R. I. 224. The following case is to the point that express direction to make an arrest is not necessary, but that it is a question of fact for the jury whether, under the circumstances attending the arrest, the servant caused it: *Burk* v. *Howley,* 179 Pa. St. 539.

Mr. Justice Morris delivered the opinion of the Court:

If the circumstances attending the appellee's detention, as stated by him in his testimony, have not been grossly exaggerated by him, they constitute an abuse in the administration of the criminal law in this District to which the attention of the proper authority should have been directed, in order to prevent a recurrence of them. While arrest and detention are necessary, and even innocent persons must sometimes submit to the annoyance and humiliation of a temporary privation of liberty, when under reasonable suspicion, for the general good, yet it is never necessary, nor is it even proper, to treat those under arrest with other than reasonable consideration, whatever be their station in life. The harsh measures resorted to in the present case seem to have been wholly without excuse.

But one wrong does not justify another; and it does not follow that, because the appellee has been grievously wronged in the matter of his arrest and detention, he is entitled to be compensated for the wrong by a judgment against those who had no complicity whatever in the transaction. Upon the

record before us there is no justification whatever for the
verdict that was rendered against the members of the Adams
Express Company.   From the beginning to the end of it
there is not a scintilla of evidence upon which these defend-
ants can reasonably be held liable for the unlawful arrest
and detention of the appellee.   It is sought to hold them
solely upon the ground that in the general printed instruc-
tions issued by the Adams Express Company to its agents
and employees, and which were introduced in evidence in
the cause, these agents and employees were urged to use the
utmost diligence in the performance of their duties.   For this
is all to which the instructions amount.   And yet from these
it has been seriously and most earnestly argued that the de-
fendant Waters was within the scope of his duty and within
both the letter and the spirit of his instructions, when he
caused the appellee to be arrested, if he was in fact the cause
of the arrest.   We do not think that the proposition is re-
quired to be considered by us which would maintain that an
employer, who merely exhorts his employees generally to
perform their duty earnestly and faithfully, should by reason
of such exhortation be held liable for unlawful action of an
employee not contemplated by the employer.   The cases cited
on behalf of the appellee do not sustain any such proposition;
and we do not deem it necessary to go into an examination of
them to show that they are not applicable at all to the con-
tention on behalf of the appellee.

We are of opinion that the trial court should have in-
structed the jury to return a verdict for the defendants Weir,
Sanford and Seward for the utter absence of testimony that
would implicate them in the arrest of the appellee, and that
it was error to refuse the instruction which was requested by
the defendants to that effect.   As to the defendant Seward,
the verdict and judgment are void in any event.

More plausible, although scarcely more substantial, was
the case made at the trial by the plaintiff against the defend-
ant Waters.   But even here we think that there was no suf-
ficient evidence to justify a verdict against the defendant.
There is no proof whatever that he requested, or caused, or

authorized the arrest of the appellee; nor does it appear that he made any complaint, formal or informal, against the appellee. He had his suspicions. Those suspicions, although unfounded in fact, were not unreasonable under the circumstances. He was approached by the detectives; for it would appear from the record that they sought him, not he them; and in answer to their questionings he communicated his suspicions to them. In this there was nothing improper or unlawful. Thereupon, acting apparently upon their own motion, the detectives arrested the appellee. This is the sum total of the evidence; and it wholly fails to disclose any action of the defendant for which he should in law be held liable to the appellee.

The case against Waters depends entirely upon the testimony of the detective Tyser, who made the arrest, and who was called as a witness by the plaintiff. We extract from the record, in the words of the record, so much of this testimony as bears upon the supposed complicity of Waters in the transaction. It is as follows:

" * * * That he (the witness Tyser) asked Mr. Waters where Anthony lived, but Waters did not know; that when the witness saw Waters witness opened the conversation by saying he understood there had been a loss in his (Waters') office, and that witness asked Waters in regard to the loss; that Waters told witness what was reported to have been stolen or lost, and that witness asked Waters if he had any suspicions, and that Waters said, ' I will relate them to you, and see what you think;' that then Waters went on and told the witness that on the day the pearls were missing the plaintiff Anthony was there in the office, and that the next day the witness mentioned the loss to Anthony, and that Anthony made the remark, ' Well, you remember I was not here; I was at home oiling two floors that day;' and that witness said, ' Is that so?' and that Waters replied to Parham (the other detective employed in the case), ' No; he was here with me,' and that witness then said, ' How could he (the plaintiff) make that assertion to you, then?' and that Waters replied, ' There you are;' that witness then said to Waters,

' That looks suspicious;' that witness could not state exactly the conversation he had with Waters, but it was such as would lead him (the witness) to believe that Waters was responsible for the pearls stolen, and that witness would take Anthony in for the pearls, *by the advice of Waters;* that witness' conversation with Waters occurred around the platform of the Potomac railway station in this city at divers times; * * * that when witness arrested Anthony he asked Mr. Waters to accompany him to police headquarters as the complaining witness; that witness judged from his conversation with Waters that he was the complaining witness, and *requested witness to make the arrest* as the suspicion was so strong against Anthony that he would make the arrest under that suspicion. * * * "

We have italicised the two expressions in this statement which seem to bear most strongly against the defendant Waters; and this is all the testimony that there is against him. To deprive a man of life, liberty, or property upon evidence so unsubstantial, is not to be tolerated. Nowhere does the witness say that Waters requested or even suggested to him to arrest the appellee; it is only his own inference from the conversation between Waters and himself that Waters desired the arrest to be made. We cannot accede to the theory that upon such a statement as this a man should be mulcted to the extent of upwards of five thousand dollars. This was not sufficient evidence to go to a jury; or if it was, a verdict based upon it should have been immediately set aside.

There is, however, another passage in the record which should be noticed in this connection. While the witness Tyser was on the witness stand, a controversy arose between counsel as to the purport of his previous testimony. Counsel for the plaintiff assumed to state what it was; and this is his summary of the part of it which is here important:

" And he (the witness) says as a result of the conversation with Waters and *at his request* he proceeded to arrest Mr. Anthony; and when he got Anthony down to the station, and had Waters identify him, he required Waters to go along

with him to police headquarters *as the complaining witness, upon whose complaint he had made the arrest,* and that Waters did go, and had his name entered on the blotter as the complaining witness."

Again the italics are ours. It is sufficient to say as to this statement that a comparison of it with the quotation from the record already given will show that it is very far from being accurate. The witness had not stated that he made the arrest at the request of Waters, or that he had made it on the complaint of Waters; and he had not testified that Waters was a complaining witness in any proper sense of that term. The statement, of course, is of itself of no value as testimony.

It is a peculiar fact in the case that, when subsequently Parham, the other detective who was concerned in the arrest, was placed upon the witness stand as a witness for the defense, and the counsel for the defense propounded this question to him — " Was the arrest made by the police department of the District of Columbia acting for itself, or was the arrest made at the instance and request of Waters ? " — a question which would seem to have been perfectly proper and competent, it was excluded, upon the objection of counsel for the plaintiff, on the ground that it called for the opinion of the witness. It was undoubtedly error to exclude this question. The substantial fact in controversy was, so far as Waters was concerned, whether the arrest had been made at his instance and request. It was not an opinion that was called for; it was a fact that was sought to be ascertained. And it is strange that, by indirection and vague implication in the course of the testimony of Tyser, it was sought to establish this fact; and yet that, when the direct question was put to Parham, it should have been excluded.

It is our conclusion that there is no testimony in the record sufficient to go to the jury as against the defendant Waters; and we think that the instruction requested on his behalf, that the jury be directed to return a verdict in his favor, should have been granted.

It follows from what we have said that the judgment appealed from must be reversed. The case, however, is not one wherein a new trial should be awarded. For it must be assumed that the plaintiff has adduced all his testimony; there has been no exclusion of anything offered by him, so far as the record shows. If the testimony adduced is insufficient as the basis for the verdict of a jury in his favor, it would be useless to order a new trial.

The judgment appealed from is *reversed, with costs. And it is so ordered.*

On May 23, 1902, on motion of the appellee, the judgment of the Court of Appeals in the above cause was amended by adding thereto the following words: "And that the appellee take nothing by his writ, and that the appellant James F. Waters and the appellants Levi C. Weir and Henry Sanford, surviving partners, trading as Adams Express Company, go thereof without day."

A writ of error to remove the cause to the Supreme Court of the United States was prayed and allowed.